UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIENGKHONE S., <br><br> Petitioner, <br><br> v. <br><br> SERGIO ALBARRAN, Acting Field Office Director of San Francisco Office of Detention and Removal; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01505-KES-HBK (HC) <br><br> ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION <br><br> Doc. 6 |

This habeas action concerns the re-detention of petitioner Viengkhone S., a noncitizen who was ordered removed to Laos in 2005.[1] He has been detained and released several times since then—twice in the past six months. This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 6. Petitioner seeks an order barring his re-detention without a pre-deprivation bond hearing where the government must prove that there is a significant likelihood of his removal in the reasonably foreseeable future or that he is a flight risk or danger to the community such that his physical custody is legally justified. He also seeks an order barring his removal to a third country without constitutionally adequate procedures. For the

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

**I.      Background**[2]

      **a.  Petitioner's Citizenship**

Petitioner is ethnically Laotian, and he was born in a refugee camp in Thailand in 1983. Doc. 2 at ¶ 3; *see* Doc. 10-1, Ex. 3.  Petitioner claims that he is stateless, Doc. 2 at ¶ 3, while respondents state that he is a citizen of Laos, Doc. 10 at 2.  Though the parties do not explain why they have disparate views on petitioner's citizenship status, some of petitioner's records appear to clarify the source of this disagreement.

Petitioner includes a declaration by Dr. Thao Ha, a professor of sociology at MiraCosta College in Oceanside, California.  Doc. 6-9, Ex. I, Ha Decl.  Dr. Ha's declaration explains that, historically, Laos documented citizenship through official records, such as a birth certificate.  Doc. 6-9, Ex. I, Ha Decl. at ¶ 3.  However, for those who were born to Laotian parents in refugee camps outside of Laos, Laos never produced official records regarding their citizenship, and Laos has no laws or regulations that establish whether they are citizens of Laos.  *Id.* at ¶¶ 3, 7.  The United Nations High Commissioner for Refugees ("UNCHR") assisted the United States in processing those who were born to Laotian parents in refugee camps outside of Laos for migration to the United States, and the UNCHR assigned citizenship based on the nationality of a child's parents.  *Id.* ¶ 6.  "This practice led to Laotian refugees born in Thailand being classified as Laos citizens through external organizations that were not representative of the Laos government."  *Id.*

Laos and the United States do not have a formal repatriation agreement.  *Id.* ¶ 7.  Laos has historically not accepted deportees who were born to Laotian parents in refugee camps outside of Laos—unless the deportee had living relatives in Laos—because there was no way to determine those deportees' citizenship.  *Id.* ¶ 7.  It appears that Laos does not treat them as its citizens

---
[2] This section includes information from petitioner's verified petition and the parties' other filings.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

1  because, when Laos has accepted such a deportee, it has required the deportee to fill out an
2  application for permanent residence, rather than giving the deportee citizenship. *See id.* ¶ 8. It
3  appears that Laos has begun accepting more deportees this year, but Dr. Ha's declaration states
4  that it is not clear what criteria it considers when making a determination as to whether it will
5  accept the deportee. *Id.* ¶ 8.

### b. Petitioner's Background

Petitioner was admitted to the United States as a refugee in 1990 when he was six or seven years old, and he became a lawful permanent resident in 1993. Doc. 2 at ¶ 31. In 2003, petitioner was convicted of unlawful sexual intercourse with a minor in violation of California Penal Code § 261.5(c). Doc. 2 at ¶ 4; Doc. 10-1, Jaimes Decl. at ¶ 7. On July 12, 2005, petitioner was ordered removed to Laos based on that conviction. Doc. 2 at ¶ 4. Following the issuance of the removal order, petitioner was detained at an immigration detention center. *Id.*; Doc. 10-1, Jaimes Decl. at ¶ 8. Petitioner was released from detention on an order of supervision on October 19, 2005, because ICE was unable to remove him to Laos. Doc. 2 at ¶ 4; *see* Doc. 10-1, Jaimes Decl. at ¶¶ 10–11. In 2007, petitioner was convicted of possession of MDMA for sale in violation of California Health & Safety Code § 11378. Doc. 10-1, Jaimes Decl. at ¶ 12.

Petitioner's order of supervision required him to perform yearly check-ins with ICE. Doc. 2 at ¶ 5. Respondents do not dispute that petitioner reported for all yearly check-ins as required. *Id.*; *see* Doc. 10. Petitioner now has a U.S. citizen fiancé, U.S. citizen daughters, and he is employed. Doc. 2 at ¶¶ 10, 14.

### c. Petitioner's Recent Re-Detentions

On June 25, 2025, when petitioner appeared for his yearly scheduled check-in, ICE revoked petitioner's order of supervision and re-detained him, asserting that there was now a significant likelihood that ICE could remove him to Laos. Doc. 2 at ¶ 5; Doc. 10-1, Jaimes Decl. at ¶ 13. Laos issued a travel document for petitioner on August 6, 2025 that was valid for 90 days. Doc. 10-1 at ¶ 14 & Ex. 3. However, petitioner asserts that the photograph on the travel document is not a photograph of him. Doc. 11 at 4; Doc. 6-1, Castillo Decl. at ¶ 5 n.1. Respondents do not address this contention. *See* Doc. 10. The Laos travel document expired on

3

1   November 4, 2025. *See* Doc. 10-1, Ex. 3.

2   While he was detained, petitioner filed a motion to reopen his removal proceedings based on an intervening change in law since his removal order was issued and a motion for stay of removal with the immigration court. *See* Doc. 2 at ¶¶ 4, 7, 36. The immigration court initially granted petitioner's motion to reopen and his motion for stay of removal. *Id.* ¶ 37. Petitioner also filed a petition for writ of habeas corpus with the United States District Court for the District of Arizona. *Id.* ¶ 6. The district court granted the petition on September 24, 2025 and ordered petitioner released, finding that ICE had unlawfully revoked petitioner's order of supervision because the official who authorized the revocation did not have the authority to do so. *Id.* ¶ 6 (citing Doc. 21, *Sikeo v. Cantu*, 2:25-cv-03191-SHD-CDB (D. Ariz. Sept. 24, 2025)). The Court also found that there was no longer a justification for petitioner's detention because he had been detained to effectuate his removal to Laos, and his removal was no longer possible due to the immigration court's stay of removal. Doc. 21 at 3, *Sikeo v. Cantu*, 2:25-cv-03191-SHD-CDB (D. Ariz. Sept. 24, 2025).

ICE released petitioner on September 24, 2025 and placed him on another order of supervision. *Id.* ¶ 40. Petitioner's recent immigration proceedings have been convoluted. *See* Doc. 2 at ¶¶ 35–40, 41. It appears that, after initially granting petitioner's motion to reopen and motion to stay, the immigration court subsequently reconsidered and denied both motions. *See* Docs. 2-4, 2-5. Petitioner then filed a second motion to reopen, Doc. 2 at ¶ 41, and that motion was denied on November 25, 2025. Doc. 12-1, Castillo Decl. at ¶ 3. Petitioner appealed to the BIA and that appeal remains pending. *Id.* ¶ 4.

On October 29, 2025, ICE told petitioner to report for a scheduled check-in on November 7, 2025. Doc. 6-1, Castillo Decl. at ¶ 11. When petitioner reported as instructed on November 7, 2025, ICE revoked petitioner's order of supervision and re-detained him again. Doc. 6-1, Castillo Decl. at ¶ 14. Petitioner was served with a notice of revocation of release. The notice of revocation of release states:

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On July 12, 2005, you were ordered removed to Laos by an

4

> Immigration Judge, and therefore, you are subject to an administrative final order of removal. On September 24, 2025, you were released on an Order of Supervision pending removal. As of November 7, 2025, you have no petition or application that can prevent your re-detention. You will be held in ICE ERO custody, as there is a significant likelihood of removal in the reasonable future.

Doc. 10-1, Ex. 4. The notice continues: "Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time." *Id.*

Petitioner filed a motion to enforce in his prior habeas case in the District of Arizona, arguing that his re-detention on November 7, 2025 violated that court's order granting his petition for writ of habeas corpus. Doc. 23, *Sikeo v. Cantu*, 2:25-cv-03191-SHD-CDB (D. Ariz. Nov. 7, 2025). ICE thereafter released petitioner from custody on November 12, 2025; respondents' opposition states that they did so "[o]ut of an abundance of caution." Doc. 10-1, Jaimes Decl. at ¶ 23; Doc. 10 at 3. ICE placed petitioner on another order of supervision on November 12, 2025, and petitioner is scheduled for an in-person check-in on December 12, 2025. Doc. 11-3. The district court denied petitioner's motion to enforce on November 24, 2025, finding that "[r]espondents' actions—while concerning—did not squarely violate [that court's] September 24 Order." Doc. 33, *Sikeo v. Cantu*, 2:25-cv-03191-SHD-CDB (D. Ariz. Nov. 24, 2025).

## II.    Procedural History

On November 6, 2025, petitioner filed a motion for temporary restraining order, Doc. 1, and a petition for writ of habeas corpus, Doc. 2, arguing that the Due Process Clause of the Fifth Amendment entitled him to a pre-deprivation bond hearing prior to any re-detention and proscribes ICE's current policy regarding third country removals. The Court set a briefing schedule on the motion for temporary restraining order. Doc. 4.[3] Petitioner filed an amended motion for temporary restraining order on November 10, 2025, noting that he had been re-detained on November 7, 2025. Doc. 6. He raised the same claims in the amended motion for temporary restraining order, but he also argued that ICE violated 8 C.F.R. §§ 241.4(l) and 241.13(i) when it re-detained him. *See id.* The parties stipulated to a new briefing schedule,

---

[3] Contrary to petitioner's assertion in his motion and reply, *see, e.g.*, Doc. 6 at 15, the Court's minute order (Doc. 4) did not address the issue of detention and did not bar ICE from re-detaining him on November 7, 2025.

5

1  Docs. 7, 9, and respondents filed an opposition on November 17, 2025, arguing that petitioner
2  was unlikely to succeed on the merits and that his claims were moot in light of his subsequent
3  release on November 12, 2025.  Doc. 10.[4]  Petitioner filed a reply on November 19, 2025.
4  Doc. 11.  ICE has scheduled petitioner for a further check-in on December 12, 2025.  *See* Doc. 11
5  at 8.

### III.    Conversion of the Motion

When the Court set a briefing schedule on the motion, it ordered the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether the parties requested a hearing on the motion.  Doc. 4.  Neither party objected to converting the motion to one for a preliminary injunction, and neither party requested a hearing.  *See* Docs. 6, 10, 11.  Given that the standard for issuing a temporary restraining order is the same as for a preliminary injunction, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond through a written opposition, petitioner's motion is converted to a motion for preliminary injunction.

### IV.    Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical."  *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of*

---

[4] In their opposition, respondents request that the Court "strike and [] dismiss all unlawfully named officials under § 2241."  Doc. 10 at 1, n.1.  Such a "request for court order must be made by motion."  *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025).  "[A] request for affirmative relief is not proper when raised for the first time in an opposition."  *Id.*  As such, respondents' request is denied without prejudice.

*Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### V.  Jurisdiction and Mootness

Respondents make the threshold argument that petitioner's release from custody on November 12, 2025 moots his claims.[5] Doc. 10 at 6–9. Respondents are correct as to some of the claims, but not others. Petitioner's claim that ICE unlawfully revoked his order of supervision in violation of 8 C.F.R. § 241.13(i) is moot because petitioner has since been released from custody. *Cf. Nguyen v. Hyde*, 788 F. Supp. 3d 144, 153 (D. Mass. 2025) (ordering release from custody based on a violation of 8 C.F.R. § 241.13(i)); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (same). However, petitioner's other two claims, that the Due Process Clause requires that he be provided a hearing prior to any re-detention and that the Due Process Clause requires that he be provided constitutionally adequate procedures before being removed to a third country, are not moot.

"Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must

---

[5] Respondents state that they "move[] under Federal Rules of Civil Procedure 12(b)(1) to dismiss all claims in the petition" as moot. Doc. 10 at 6. As noted above, a "request for court order must be made by motion" and is not proper when raised for the first time in an opposition." *Ortega*, 2025 WL 2243616, at *4. Nevertheless, because "mootness is a jurisdictional issue, federal courts are obligated to raise it *sua sponte*." *Church of the Gardens v. Quality Loan Servs. Corp.*, No. 3:23-CV-06193-TMC, 2025 WL 1744713, at *1 (W.D. Wash. June 24, 2025) (citing *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128 (9th Cir. 2005)). The Court will therefore assess whether petitioner's claims are moot.

1  continue throughout its existence (mootness).'" *Arizonans for Official English v. Arizona*, 520
2  U.S. 43, 68 (1997) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397
3  (1980)). "A claim is moot if it has lost its character as a present, live controversy." *Rosemere v.*
4  *Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F. 3d 1169, 1172 (9th Cir.
5  2009) (citations omitted).

6      "A habeas petition challenging" incarceration or detention "is never moot simply because,
7  subsequent to its filing, the petitioner has been released from custody." *Abdala v. I.N.S.*, 488 F.3d
8  1061, 1064 (9th Cir. 2007) (citations omitted). "For a habeas petition to continue to present a live
9  controversy after the petitioner's release or deportation, . . . there must be some remaining
10 'collateral consequence' that may be redressed by success on the petition." *Id.* (quoting *Spencer*
11 *v. Kemna,* 523 U.S. 1, 7 (1998)). The collateral consequences must "be specifically identified,"
12 and "only concrete disadvantages or disabilities that [have] in fact occurred, that [are] imminently
13 threatened, or that [are] imposed as a matter of law" are sufficient. *Spencer*, 523 U.S. at 8.

14     Petitioner argues that any re-detention of him would violate the Due Process Clause if he
15 were not provided a hearing where the government must prove that he is a flight risk or danger or
16 that there is a significant likelihood of his removal. *See* Doc. 6 at 23–33. Respondents have re-
17 detained petitioner twice in the last six months, in July 2025 and November 2025. In their
18 opposition, they state that he was only released on November 12, 2025 "[o]ut of an abundance of
19 caution[.]" Doc. 10 at 3. Petitioner has shown that he faces a likely risk of re-detention in the
20 reasonably foreseeable future, and his claim that the Due Process Clause bars his re-detention
21 without a bond hearing is therefore not moot.

22     Respondents rely primarily on *Abdala v. I.N.S.*, 488 F.3d 1061 (9th Cir. 2007), which is
23 distinguishable. In *Abdala*, the petitioner "challenged the length of his pre-deportation
24 detainment" and sought release from custody. *Id.* at 1062. But "[s]hortly after filing [his]
25 petition, [the petitioner] was deported." *Id.* The petitioner's deportation "cur[ed] his complaints
26 about the length of his INS detention[,]" and he "assert[ed] no collateral consequences of
27 deportation that his original petition could have redressed." *Id.* at 1065. The petitioner in that
28 case did not risk being re-detained pending further immigration proceedings because he had

8

1  already been deported. *See id.* That is not the case here.

2  Petitioner also challenges his potential removal to a third country without constitutionally
3  adequate procedures. As addressed below, petitioner has shown that ICE's current policy
4  regarding the deportation of noncitizens to a third country likely violates due process
5  requirements, and the record shows that the government does not currently have a valid travel
6  document for Laos for petitioner. Petitioner's fear that ICE will seek to remove him to a third
7  country and will follow its new policy is therefore not mooted by petitioner's current release from
8  custody, because ICE may seek to remove petitioner to a third country pursuant to its new policy
9  regardless of petitioner's custody status.

10  **VI.   Discussion**

11  **a. Petitioner is Likely to Succeed on the Merits of His Claim That the Due**
12  **Process Clause Requires a Hearing Prior to Re-Detention.**

13  Civil immigration detention is typically justified only when necessary to effectuate
14  removal or when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*
15  *v. Davis*, 533 U.S. 678, 689–90, 699–701 (2001); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172
16  (W.D. Wash. 2023). Petitioner argues that the Due Process Clause bars the government from re-
17  detaining him without first providing a hearing where it must prove he is a flight risk or danger or
18  that there is a significant likelihood of removal in the reasonably foreseeable future. *See* Doc. 6 at
19  23–33. In response, respondents argue that petitioner is in the "removal period" and must be
20  detained pursuant to 8 U.S.C. § 1231(a)(2)(A). Doc. 10 at 4–6. Respondents concede that the 90-
21  day removal period pursuant to § 1231(a)(3) on petitioner's 2005 removal order expired in 2005.
22  *See id.* at 5 n.2. However, respondents argue that because petitioner filed a motion to reopen his
23  removal proceedings and that motion was denied, the "removal period" restarted. *Id.* at 4–6.

24  Respondents' argument is unpersuasive. They do not cite any authority for the
25  proposition that the denial of a motion to reopen can restart the removal period, and their position
26  is contradicted by Ninth Circuit case law. The Ninth Circuit has described a motion to reopen as
27  a collateral challenge to a removal order. *See Diouf v. Napolitano*, 634 F.3d 1081, 1085 (9th Cir.
28  2011); *see also Escobar v. Lynch*, No. CV 16-00683 LEK-RLP, 2017 WL 2369374, at *4 (D.

9

1  Haw. May 31, 2017). Section 1231(a)(6), which applies after the removal period has lapsed, *see*
2  8 U.S.C. § 1231(a)(6), encompasses a noncitizen who has a pending "collateral challenge to his
3  removal order (a motion to reopen)[,] . . . as well as to aliens who have exhausted all direct and
4  collateral review of their removal orders." *Diouf*, 634 F.3d at 1085. And a "collateral challenge
5  to try to reopen the removal proceedings does not mean that [a] removal order is not final."
6  *Escobar*, 2017 WL 2369374, at *4. If a pending motion to reopen does not render a removal
7  order non-final, a denial of a motion to reopen would not do so either. The 2005 removal order
8  remains in place and the removal period did not restart due to petitioner's motion to reopen his
9  removal proceedings, which the immigration judge ultimately denied.

10  Turning now to petitioner's due process claim, that claim is analyzed "in two steps: the
11  first asks whether there exists a protected liberty interest under the Due Process Clause, and the
12  second examines the procedures necessary to ensure any deprivation of that protected liberty
13  interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025
14  WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*,
15  490 U.S. 454, 460 (1989)).

16  **i. Petitioner Possesses a Protected Liberty Interest.**

17  A protected liberty interest may arise from a conditional release from physical restraint.
18  *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to
19  arrest and detain an individual, a protected liberty interest under the Due Process Clause may
20  entitle the individual to procedural protections not found in the statute. *See id.* (due process
21  requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S.
22  778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)
23  (same, in parole context). To determine whether a specific conditional release rises to the level of
24  a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific
25  conditional release in the case before them with the liberty interest in parole as characterized by
26  *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation
27  marks and citation omitted).

28  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction

"enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's multiple periods of conditional release are similar. For nearly twenty years, it allowed him to live at liberty in the United States, even though under an order of supervision. Among other things, petitioner raised his two U.S. citizen children and worked. *See* Doc. 2 at ¶¶ 26, 64. The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### ii. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly twenty years, and then in the past six months, has twice been detained and released again. He has a significant interest in preventing that from re-occurring without justification.

Second, the risk of an erroneous deprivation of liberty is high. The regulations which govern how and when ICE may revoke the release of a noncitizen who has been ordered removed, detained, and then released after ICE is unable to execute the order of removal, 8 C.F.R. §§ 241.13 and 241.4, do not provide for review of ICE's reasons for revocation by a neutral arbiter. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). As another decision in this district found in evaluating a similar set of claims brought by a noncitizen who had been ordered removed, was subsequently released, and was then re-detained, "[t]he lack of any neutral review [under the regulations] creates a heightened risk of deprivation for Petitioner." *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *9 (E.D. Cal. Aug. 20, 2025).[6]

---

[6] The Ninth Circuit noted the need for neutral review of the reasons for detention in a similar context, where a noncitizen was facing prolonged detention without a bond hearing and ICE had unilateral discretion whether to detain or release:
> Diouf's own case illustrates why a hearing before an immigration judge is a basic safeguard for aliens facing prolonged detention under § 1231(a)(6). The government detained Diouf in March 2005. DHS conducted custody reviews under § 241.4 in July 2005 and July 2006. In both instances, DHS determined that Diouf should remain in custody pending removal because his "criminal history and lack of family support" suggested he might flee if released. In February 2007, however, an immigration judge determined that Diouf was *not* a flight risk and released him on bond. If the district court had not ordered the bond hearing on due process grounds, Diouf might have remained in detention until this day.

*Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011).

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an *overwhelming interest* in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in revoking parole without some informal procedural guarantees."). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before he was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782. Numerous district courts have held that these principles extend to the context of immigration detention.[7] Petitioner is likely to succeed on the merits of his claim that his re-detention without such a hearing violates the Due Process Clause.

---

[7] *See, e.g.*, *Yang*, 2025 WL 2791778, at *7–10; *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

### b. Petitioner is Likely to Succeed on the Merits of His Third-Country Removal Claim.

Petitioner argues that ICE's current policy regarding third country removals violates due process requirements. Doc. 6 at 33–37. The policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." *See* ICE Policy Memorandum, *Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)*, July 9, 2025, available at https://storage. courtlistener.com/recap/gov.uscourts.mad.282404/gov. uscourts.mad.282404.190.1.pdf.[8] The policy further provides that, "[i]n all other cases," ICE may still remove the noncitizen to the third country by following certain procedures. *Id.* Those procedures include that "ERO [Enforcement and Removal Operations] will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal." *Id.* (emphasis in original). If ICE follows this policy, petitioner would not have a meaningful opportunity to present this claim in any court before he is removed.

Respondents do not address petitioner's arguments regarding whether they will attempt to remove petitioner to a country other than Laos. *See* Doc. 10. The Court therefore address petitioner's claim as to this issue.

The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).[9]  "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an

---

[8] Petitioner cites to the version of the policy that was in effect in March 2025, but that version of the policy was superseded by an updated policy in July 2025. *See* Doc. 2-8. However, the pertinent parts of the two policies are the same in substance.

[9] "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001).

14

immigrant was not provided an opportunity to address his fear of persecution in that country." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).  Other courts in this circuit have recognized that ICE's current policy is unconstitutional, and this Court agrees with the reasoning of those decisions.  *See, e.g.*, *Nguyen v. Scott*, 2025 WL 2419288, at *18–23; *Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025).  Petitioner is likely to succeed on the merits of his third-country removal claim.

### c. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Given that petitioner has established that ICE likely intends to re-detain him without complying with due process requirements, petitioner faces irreparable harm absent a preliminary injunction.  Petitioner also faces irreparable harm because he faces a risk of being sent to a third country and he has shown that ICE's current policy regarding third country removals likely violates due process.

### d. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the government has a strong interest in enforcing the immigration laws, it "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law.  *Zepeda v. I.NS.*, 753 F.2d 719, 727 (9th Cir. 1983).  Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor.  "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### VII. Conclusion and Order

Accordingly,

1. Petitioner's motion for preliminary injunction, Doc. 6, is GRANTED.
2. Respondents are enjoined and restrained from re-detaining petitioner unless a neutral decisionmaker determines that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  At any such bond hearing, the neutral adjudicator must consider whether, in lieu of detention, alternatives to detention exist to mitigate any risk that the U.S. Department of Homeland Security ("DHS") may establish.
3. Respondents are enjoined from removing petitioner to any third country without first providing him with constitutionally compliant procedures, including:
    a. Written notice to petitioner and counsel of the third country to which he may be removed, in a language that petitioner can understand, provided at least 21 days before any such removal;
    b. A meaningful opportunity for petitioner to raise a fear of return for eligibility for protection under the Convention Against Torture, including a reasonable fear interview before a DHS officer;
    c. If petitioner demonstrates a reasonable fear during the interview, DHS must move to reopen his underlying removal proceedings so that he may apply for

           relief under the Convention Against Torture;

    d. If it is found that petitioner does not demonstrate a reasonable fear during the interview, a meaningful opportunity, and a minimum of 15 days, for petitioner to seek to move to reopen his underlying removal proceedings to challenge potential third-country removal.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See, e.g. Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

5. The portion of the Court's November 6, 2025 minute order, Doc. 4, prohibiting the removal or transfer of petitioner is vacated.

6. Respondents may file an additional brief related to the merits of the petition within 30 days, and petitioner may file a reply brief within 15 days of respondents' brief. Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

Dated:   December 8, 2025                                              

                                                                   UNITED STATES DISTRICT JUDGE